UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD COLPOYS,

                Plaintiff,

v.

COUNTY OF ERIE, *et al.*,

                Defendants.

**DECISION AND ORDER**
12-CV-908S

## I. INTRODUCTION

Plaintiff, Donald Colpoys, brings this action against Erie County, the Erie County Sheriff's Department, and his supervisor, Lt. James Carney. Colpoys, a sheriff's deputy at the Erie County Holding Center, alleges that Defendants violated his rights under the United States Constitution, the Americans with Disabilities Act, the Family Medical Leave Act, and New York State's Human Rights Law.

Defendants now move to dismiss the complaint. For the following reasons, that motion is granted in part and denied in part.

## II. BACKGROUND[1]

Colpoys began working for the County in 1997. (Compl., ¶ 13; Docket No. 1.) In 2006, he suffered a knee injury, which rendered his knee "limited with respect to prolonged use." (Id., ¶ 14.) For a time after this injury, Colpoys worked only eight-hour shifts. As his strength grew, however, and with his doctor's approval, he began to work four-hour

---

[1]Facts alleged in the complaint must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

overtime shifts in addition to normally scheduled eight-hour shifts. (Id., ¶ 15.) "This was the state of things until new supervisory personnel took over." (Id., ¶ 16.) At some unidentified point, a new executive director, Susan Sizemore, restricted Colpoys' shifts to eight hours.[2] This apparently prompted Colpoys, on April 12, 2010, to make a "medical accommodation request," "for workdays not to exceed 12 hours." (Id., ¶ 17). This would allow Colpoys to work a four-hour overtime shift, while excusing him from any longer overtime work. The "Respondent" (presumably Erie County) granted this request. (Id.) But, according to Colpoys, he "was still frequently denied the opportunity for overtime hours by Lt. James Carney." (Id.) Lt. Carney told Colpoys that "there are no four hour shifts," even though, according to Colpoys, "other similarly situated employees without disability-related restrictions were allowed to work various portions of an eight hour shift without comment or problems."[3] (Id.)

On June 15, 2010, Colpoys asked Sizemore "to grant him a temporary extension of his accommodation until [his] next doctor's appointment[,] which would be in a few days." (Id., ¶ 18.) But Sizemore denied that request. (Id.) On June 22, 2010, with the "accommodation" period now closed and the extension request denied, Lt. Carney forced Colpoys to work a 16-hour shift. (Id., ¶ 19.) This "exacerbated [Colpoys'] disability to the point where it caused [him] to suffer severe pain and extreme swelling of his knee." (Id.) The pain was so bad that, at approximately 5:00 a.m., "Lt. Carney finally relented and sent

---

[2]Colpoys does not identify what entity Sizemore, who is not named as a defendant, is affiliated with.

[3]Although Colpoys does not clarify whether he actually worked any four-hour shifts during this "accommodation period," this Court assumes that he did work at least some because his requests were only "frequently" denied, not *always* denied.

a sergeant to take [Colpoys] to the hospital." (Id., ¶ 20.)

Since then, despite his request to work four-hour overtime shifts, Colpoys has been given no overtime; he is restricted to regular, eight-hour shifts. (Id., ¶ 21.) As Colpoys alleges, "Respondent has completely set aside any recommendations by medical professionals by stating without explanation that the forced eight hour shift is an essential requirement of the job, and issuing orders to deny [Colpoys] any accommodation at all." (Id., ¶ 22.)

## III.  DISCUSSION

### A.  Motion to Dismiss Standard – Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. See Id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

**B.    Defendants' Motion to Dismiss**

Colpoys brings claims under New York State's Human Rights Law, the Equal Protection Clause of the United States Constitution, the Americans with Disabilities Act, and the Family Medical Leave Act.  Defendants seek to dismiss each of those claims.

As an initial matter, any claim against the Sheriff's Department must be dismissed; it is merely an administrative arm of the County, and it therefore lacks the capacity to be sued. See, e.g., Holley v. County of Orange, N.Y., 625 F. Supp. 2d 131, 143 (S.D.N.Y. 2009) ("[T]here can be no claims against the Sheriff's Department itself as it is an arm of a municipality.").

The claims against the remaining defendants are discussed below.

### 1. New York State Human Rights Law – Statute of Limitations

There is no dispute that the statute of limitations governing Colpoys' claim under New York State's Human Rights Law against the County is one year and ninety days. See N.Y. Gen. Mun. Law § 50–i(c). Colpoys also concedes that the most recent alleged discriminatory act – the date on which the clock begins to run – occurred on July 2, 2010. (Compl., ¶ 11.) Finally, there is no dispute that this action was filed on September 25, 2012 – outside of the one-year-and-ninety-day period. Citing these facts, the County moves to dismiss this claim for Colpoys' failure to assert it within the statutory limitations period.

Colpoys, however, argues that by filing a complaint with the New York State Division of Human Rights, he tolled the limitations period. Typically, that would be correct; New York Executive Law § 279(9) provides that "where the [Division of Human Rights] has dismissed a complaint on the grounds of administrative convenience . . . , such person shall maintain all rights to bring suit as if no complaint had been filed with the division." See also Sundaram v. Brookhaven Nat. Labs., 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) (citing Penman v. Pan American World Airways, Inc., 69 N.Y.2d 989, 990-91, 517 N.Y.S.2d 719, 719, 510 N.E.2d 803 (1987)) ("The statute is tolled . . . during the pendency of any complaint that is filed with the [Division of Human Rights].").

But in his complaint, Colpoys admits that he "made application to the New York State Division of Human Rights to withdraw the matter for administrative convenience," and that this request was subsequently granted. (Compl., ¶ 9.) This proves fatal to his claim because Executive Law § 279(9) further provides that in a situation like this – where a Division of Human Rights case is dismissed in accordance with the plaintiff's request – "such party's rights to bring such cause of action before a court of appropriate jurisdiction *shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the [D]ivision [of Human Rights]*." (Emphasis added). Colpoys is therefore "precluded from the benefit of any tolling that might have been available had the D[ivision] [of] H[uman] R[ights] dismissed the complaint for administrative convenience on its own." See Bishop v. Henry Modell & Co., No. 08 CIV. 7541 (NRB), 2009 WL 3762119, at *8 (S.D.N.Y. Nov. 10, 2009). And since the statute of limitations was not tolled, Colpoys' Human Rights Law claim against the County falls outside of the limitations period, and it must be dismissed.

   2.   **Fourteenth Amendment – Equal Protection Clause**

Colpoys' equal protection claim, brought under 42 U.S.C. § 1983 and against Lt. Carney, must also be dismissed.[4] Here, Colpoys essentially argues that he was treated differently – *i.e.*, denied four-hour overtime shifts – than other similarity situated employees who were given modified overtime schedules. But "to plead a facially valid equal protection

---

[4] Defendants move to dismiss this claim, which appears to be the only claim asserted against Lt. Carney (it is the only claim where he is named, and other claims refer to a single "Defendant," that, at paragraph two of the complaint, is identified as Erie County) because Lt. Carney was not personally served. At the time of briefing, Colpoys asserted that he was in the process of serving Lt. Carney. But there is no proof of service on the Docket indicating that Lt. Carney has been served since the motion was filed. In any event, because this Court finds the claim against Lt. Carney should be dismissed on the merits, it need not reach the service issue.

claim, a plaintiff must allege (1) that he has been treated differently from similarly-situated persons, and (2) that the discrimination is based upon a *constitutionally impermissible basis, such as his race, religion, national origin, or some other protected characteristic*. Sullivan v. Chappius, 711 F. Supp. 2d 279, 284 (W.D.N.Y. 2010) (emphasis added). Here, Colpoys does not allege that he was discriminated against on the basis of constitutionally-protected status. And his claim therefore fails at prong two.

Further, although Colpoys does not argue that he is asserting a "class-of-one" claim, such a claim would also be subject to dismissal.

To state a class-of-one equal protection claim, the plaintiff must allege that he was intentionally treated differently from other similarly-situated individuals without any rational basis. Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). There is, accordingly, no protected-class requirement. But the Supreme Court eliminated this type of claim for government employees. Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 606-07, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); see also Bush v. Cnty. of Orleans, No. 08-CV-6444T, 2009 WL 2515654, at *3 (W.D.N.Y. Aug. 14, 2009) ("[A] public employee who does not contend that she is being subjected to discrimination based upon membership in a protected class and instead claims that she has been mistreated due to personal malice on the part of a supervisor, may no longer proceed on a class of one theory."). This claim is therefore dismissed.

### 3. Americans with Disabilities Act

To state a discrimination claim under the Americans with Disabilities Act ("ADA"), a plaintiff must allege that: (1) his employer is subject to the ADA; (2) he is disabled within

the meaning of the ADA; (3) he is otherwise qualified to perform the essential functions of his job without or without a reasonable accommodation; and (4) he suffered an adverse employment action because of her disability. See Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004).

At this point, the County raises no argument with respect to the first, second, and fourth prongs of Colpoys' ADA claim. Instead, it argues that this claim ought to be dismissed because Colpoys was not "otherwise qualified to perform the essential functions of his job." Specifically, it argues that working a full eight-hour overtime shift is an essential function of a sheriff's deputy, and that Colpoys inability to work a full overtime shift demonstrates that he is not "otherwise qualified."

But while the County correctly notes that Colpoys' own complaint references the Sheriff's Department's belief that an eight-hour overtime shift is an essential function of the job; and while it also correctly notes that "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," see Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003) (internal quotations omitted), it does not necessarily follow from these premises that Colpoys' complaint must be dismissed.

To start, while the court may be obligated to give deference to the employer's judgment, it is not required to blindly yield to it. Indeed, courts must make an "initial inquiry" into whether the "employer actually requires all employees in the particular position to perform the allegedly essential function." Bogner v. Wackenhut Corp., No. 05-CV-6171, 2008 WL 84590, at *5 (W.D.N.Y. Jan. 7, 2008) (quoting Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995)). Here, Colpoys alleges that other employees were in fact not

required to perform this allegedly essential function; he claims that the County permitted other employees to deviate from the very eight-hour overtime shift that the County now claims is essential. And, according to the complaint, Colpoys himself was permitted to work a modified schedule at one point.

Further, the employer's judgment as to whether a function is essential is but one factor among many. The ADA regulations set forth other factors to consider: (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs. See 29 C.F.R. § 1630.2(n)(3). These factors cannot be weighed without further fact-finding. As the Second Circuit has held, there is no "precise test"; rather, the court must undertake a "case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995). "Ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004). Dismissal at this stage would simply be premature.

The many cases on which the County relies do not compel a different result. Tellingly, all but one reflect a decision reached on a motion for summary judgment, where the facts and circumstances of the particular job at issue – the "totality of the circumstances" – can be weighed. To pick just one as an example, the court in Baker v. AVI Foodsystems, Inc., held, on a motion for summary judgment, that "*the evidence*

*establishes* that the demands of plaintiff's position necessitated her working more than eight hours per day on a regular basis." No. 10-CV-00159AM, 2011 WL 6740544, at *10 (W.D.N.Y. Dec. 6, 2011) (emphasis added). Here, aside from the pleadings, there is no evidence before this Court.[5]

This is not to say that the "essential-function" or "reasonable-accommodation" question can never be answered on a motion to dismiss. In the more straightforward cases, that may be the appropriate avenue of relief. The lone case identified by the County in its original memorandum that was dismissed on a 12(b)(6) motion is an example.[6] In Ehrlich v. Gatta, the plaintiff alleged he was denied access to a parking garage because of insufficient handicap parking, but the Court dismissed the ADA claim because the garage offered nine handicap spots in accordance with state law. No. 07 CIV. 11597, 2009 WL 3213715 (S.D.N.Y. Oct. 5, 2009).

But, as demonstrated above, this case plainly presents a more nuanced question – one that cannot be answered at this stage of the litigation. The County's motion on this ground is therefore denied.

### 4. Family Medical Leave Act

The Family Medical Leave Act ("FMLA") provides employees with certain

---

[5]This Court will not consider, as the County urges it to do, the collective bargaining agreement ("CBA") between Colpoys and his employer. Colpoys does not even mention the CBA in his complaint. And for this Court to consider a document not appended to the complaint it must be "incorporated [in the complaint] by reference" or must be a document "upon which the complaint *solely* relies and which is *integral to the complaint*." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original). The CBA meets none of these requisites.

[6]The County also claims that Querry v. Messar, 14 F. Supp. 2d 437, 445 (S.D.N.Y. 1998) was decided on a motion to dismiss. This is incorrect. The court dismissed the ADA claim on a motion for summary judgment; in fact, it did so on the basis of the defendant's evidence that it offered the plaintiff light-duty work, which served as a reasonable accommodation. The court dismissed separate claims, against separate defendants, on a motion to dismiss.

substantive rights. See, e.g., Sarno v. Douglas–Elliman, 183 F.3d 155 (2d Cir.1999); 29 U.S.C. § 2601 *et seq.* For example, it "provides eligible employees the right to take unpaid leave for up to twelve weeks for a serious medical condition as defined by the Act." Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 426-27 (S.D.N.Y. 2004) (citing 29 U.S.C. § 2612(a)(1)). Section 2615(a)(1) of the Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

Typically, to state a claim of inference with FMLA rights, a plaintiff must allege that (1) he is an eligible employee under the FMLA; (2) defendant is an employer as defined in FMLA; (3) he was entitled to leave under FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) he was denied benefits to which he was entitled under FMLA. Geromanos, 322 F. Supp. 2d at 427.

Here, however, Colpoys alleges that the County interfered with his rights not by denying him benefits, but by forcing him to take FMLA leave when he did not have to. The Second Circuit has neither recognized nor rejected the viability of this type of claim. Colpoys therefore appeals to the Sixth Circuit for support. In Wysong v. Dow Chem. Co., that Circuit "recognize[d] that an employer who forces an employee to take leave may create a claim under the FMLA." 503 F.3d 441, 449 (6th Cir. 2007). But the court further found that "this, in itself, does not create a ripe, involuntary-leave claim." Id. The panel emphasized that the claim "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." Id. Here, Colpoys does not allege that he was denied leave. And he does not identify any court that has held that this type of FMLA claim is justiciable

under these circumstances, *i.e.*, before the employee has been denied any benefits. It appears that the Sixth Circuit is the only circuit to explicitly recognize that such a claim is viable even if the employee had later been denied leave. But, as noted, even that court would not permit Colpoys' claim to proceed. As the Eighth Circuit held, "if forced leave can amount to interference with a right provided under the FMLA, it can do so only if the employer's action prevents the employee from using benefits to which she is entitled under the Act. The statute entitled [the plaintiff] to a certain amount of leave. [The defendant] did not interfere with that entitlement. The district court correctly dismissed this claim." Walker v. Trinity Marine Products, Inc., 721 F.3d 542, 545 (8th Cir. 2013); see also Grace v. Adtran, Inc., 470 F. App'x 812, 816 (11th Cir. 2012) (withholding judgment on viability of claim generally, but affirming dismissal because, even if viable, it ripens only when the employee is actually denied benefits). In accordance with the weight of authority, this claim is dismissed.

## IV. CONCLUSION

The Sheriff's Department is dismissed as a party because it does not have the capacity to be sued. Colpoys' New York Human Rights Law claim is dismissed because it falls outside the statute of limitations. His equal protection claim is also dismissed because he has not alleged differential treatment on the basis of a protected class, and he cannot assert a class-of-one claim. And his FMLA claim is dismissed because he has not alleged that he was denied any benefits.

But Colpoys' ADA claim withstands the motion to dismiss because, most importantly, he has alleged that other sheriff's deputies were permitted to modify the overtime schedule, lending plausibility to the premise that, contrary to the County's

position, an eight-hour overtime shift is not an essential function of his job.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 5) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: September 27, 2013
Buffalo, New York

       /s/William M. Skretny
      WILLIAM M. SKRETNY
           Chief Judge
     United States District Court